IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES GRIFFITH )
)
v. ) NO. 3:08-0385
)
WILLIAM WHITESELL, et al. )

TO: Honorable Robert L. Echols, District Judge

## REPORT AND RECOMMENDATION

By Order entered April 22, 2008 (Docket Entry No. 4), the Court referred this prisoner civil rights action to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), for management of the case, for decisions on all pre-trial, non-dispositive motions, to issue reports and recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court are the Motion for Summary Judgment filed by Defendant Truman L. Jones, Jr. (Docket Entry No. 63), and the Motion for Summary Judgment filed by Defendant John D. Rudd (Docket Entry No. 70). Plaintiff has responded in opposition to the motions. See Docket Entry Nos. 77, 83, 86-87, and 90-91. See also Docket Entry Nos. 94 and 98. Set out below is the Court's recommendation for disposition of the motions.

### I. BACKGROUND

Plaintiff is currently an inmate of the Tennessee Department of Correction ("TDOC") confined at the Northwest Correctional Complex in Tiptonville, Tennessee. He brought this action pro se and in forma pauperis on January 30, 2008, asserting civil rights claims under 42 U.S.C.

1

§ 1983. By the Order of referral, process was issued to two defendants on Plaintiff's claims that he was not given adequate treatment for serious medical needs from February through August 2007, during his confinement at the Rutherford County Adult Detention Center ("RCADC") prior to his transfer to a TDOC facility. See Docket Entry No. 3. Several other claims and defendants were dismissed from the action. Id.

The two defendants for whom process was issued are Rutherford County Sheriff Truman Jones and the RCADC Medical Director John D. Rudd, M.D.[1] Both defendants have filed answers to the complaint, see Docket Entry Nos. 29 and 43, and a scheduling order (Docket Entry No. 36) and amended scheduling order (Docket Entry No. 60) were entered to facilitate pretrial activity in the action. A jury trial has been demanded.[2]

## II. PLAINTIFF'S CLAIMS

On or about May 28, 2006, Plaintiff entered the RCADC and stayed there until June 5, 2006, when he was released on bond on pending state criminal charges. See Docket Entry No. 87-1, at 4, 14, and 18. At the time, he was 69 years old and suffered from a variety of medical maladies, including kidney stones, diabetes, and heart, thyroid, prostrate, urinary, breathing, and bladder problems. Prior to his incarceration, he was treated by the medical care providers at the Veterans Administration and was taking several medications.

Plaintiff returned to the RCADC on or about February 15, 2007, to await transfer to the TDOC for imprisonment after being convicted of state criminal offenses. Id. at 19-21 and Complaint (Docket Entry No. 1), at 15. Plaintiff alleges that he made numerous requests for his

---

[1] Although the complaint only identified the Medical Director at the RCADC as a defendant, an appearance has been entered on behalf of John D. Rudd and he has defended the action. See Docket Entry No. 11.

[2] Also pending before the Court are Plaintiff's motion to amend (Docket Entry No. 85) and to depose witnesses (Docket Entry No. 99), as well as Defendant Rudd's motion to file a reply (Docket Entry No. 97) and amended motion to ascertain status (Docket Entry No. 103). By contemporaneously entered orders, these motions have been addressed.

2

medications and medical treatment at the RCADC during the period from February through August, 2007, but that his requests "were ignored," and he was "allowed to suffer . . . ." See Complaint (Docket Entry No. 1), at 16. Plaintiff contends that he made written and verbal complaints to correctional officers and to Defendants Rudd and Jones but that these complaints were ignored and his health worsened. Id. at 17.

Plaintiff was taken to the StoneCrest Hospital on June 15, 2007, for emergency treatment related to kidney stones and stayed at the hospital until June 24, 2007, when he was discharged to the RCADC. Plaintiff asserts that the treating physician at StoneCrest ordered medication for him, directed that he return to StoneCrest within five to seven days for further surgery and treatment for kidney and bladder problems. Plaintiff contends that he was not provided with the prescribed medications once he returned to the RCADC nor was he returned to StoneCrest for treatment. Plaintiff alleges that shortly thereafter he suffered from severe heart problems and that an EKG was performed but no other treatment was provided.

On August 20, 2007, Plaintiff appeared before the Rutherford County Circuit Court for a proceeding in his criminal case. Plaintiff's medical care at the RCADC was apparently discussed and, on August 21, 2007, Judge Harris entered an order stating:

> This matter having come before this Honorable Court on the 20th day of August, 2007, and for good cause shown it is hereby ordered that the Defendant shall be transported to the Deberry Special Needs Facility immediately upon his recovery from surgery here in Rutherford County. The Defendant's medical condition is such that he shall be transported as soon as possible to ensure proper care.

See Docket Entry No. 1, at 32.

Plaintiff alleges that instead of being transferred to StoneCrest for a follow-up surgery that had been scheduled for September 7, 2007, and to Deberry thereafter, he was transferred to the custody of TDOC and transported to the Charles Bass Correctional Center ("CBCC") on August 30, 2007. Plaintiff contends that Defendants ignored the state court order and transferred him to the TDOC prior to providing the ordered medical treatment because of budgetary or fiscal concerns.

3

## III. MOTIONS FOR SUMMARY JUDGMENT

Defendant Jones argues that summary judgment should be granted to him in his individual capacity because there is no evidence showing that he was personally involved in decisions regarding the provision of health care to Plaintiff and no evidence that he was deliberately indifferent to Plaintiff's serious medical needs. Defendant Jones further contends that the official capacity claim brought against him should be dismissed because there is no evidence that a custom or policy of Rutherford County led to a violation of Plaintiff's constitutional rights.

Defendant Rudd argues that he is entitled to summary judgment because the undisputed facts show that the care and treatment provided to Plaintiff by Dr. Rudd and the medical staff at the RCADC was constitutionally adequate. Defendant Rudd contends that the medical records show that Plaintiff was provided with regular medical care in response to his needs and complaints and that Plaintiff cannot offer evidence showing that he was treated with deliberate indifference.

## IV. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

The Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265

4

(1986); Chao v. Hall Holding Co., Inc., 338 F.3d 557, 566 (6th Cir. 2003); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## V. THE RELEVANT LAW

The government has a constitutional obligation to provide medical care for the individuals it incarcerates, and "deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

An Eighth Amendment claim for deliberate indifference has both a subjective and an objective component. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). To satisfy the objective component the plaintiff must allege that he has a "sufficiently serious" medical need. Comstock, 273 F.3d at 703. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2004).

For the subjective component, the plaintiff must demonstrate that the defendant had a sufficiently culpable state of mind, in other words, that the official acted with "deliberate

5

indifference" to the plaintiff's serious medical need. Farmer, 511 U.S. at 834, 114 S.Ct. 1970. Although this standard does not require a showing that the defendant acted with a purpose or intent to inflict harm, the standard is not satisfied by a showing of negligence. See Comstock, 273 F.3d at 703; Estelle, 429 U.S. at 105, 97 S.Ct. 285 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" a violation of the Eighth Amendment). The plaintiff must show more than medical malpractice and negligence on the part of the defendant because the subjective requirement acts "to prevent the constitutionalization of medical malpractice claims." Comstock, 273 F.3d at 703. The plaintiff must demonstrate "deliberateness tantamount to intent to punish." Horn v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994) (citation omitted). See also Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

## VI. LEGAL CONCLUSIONS

After review of the evidence presented by the parties and the entire record in the action, the Court finds that summary judgment should be granted to Defendants. While the evidence shows that Plaintiff suffered from medical needs while at the RCADC which were serious enough to satisfy the objective component of his claim, there is insufficient evidence before the Court raising a genuine issue of material fact on the issue of deliberate indifference to these needs on the part of Defendants. No reasonable jury could find in favor of Plaintiff if this action were to proceed to trial.

The Affidavit of Defendant Rudd (Docket Entry No. 73-1) and portions of Plaintiff's medical record (attachments to Docket Entry No. 87) show that Plaintiff was not ignored and was in fact treated while at the RCADC. He was repeatedly seen by medical care providers in response to his complaints during his six month stay at the RDADC, was provided with multiple prescribed

6

medications, had his blood sugar tested daily, was given an EKG test, was transported to an outside hospital for treatment on June 15, 2007, and July 13, 2007, was transported for an examination by an outside urologist on August 23, 2007, and was scheduled for surgery on September 7, 2007. Id.

Plaintiff points to two specific incidents in which he believes he was treated with deliberate indifference and about which he contends genuine issues of material fact exist. The Court finds that neither incident supports a constitutional claim and that genuine issues of material fact do not exist which require resolution by the trier of fact.

First, Plaintiff alleges that he was not provided with any type of treatment for a "heart attacka nd (sic) chest pains" on March 19, and 28, 2007, and that he has subsequently been diagnosed as having heart valve damage which will require surgery. See Plaintiff's Response to Defendant Rudd's Statement of Undisputed Material Facts (Docket Entry No. 87-1), at 123-24; Plaintiff's Response to Motion for Summary Judgment (Docket Entry No. 86), at 3-4 and 8.

Plaintiff submitted a sick call request on March 19, 2007, complaining of "chest pains - leg cramps - kidney problem, prostrate problem - shortage of breath - arms and shoulder numb." See Docket Entry No. 87-1, at 27 (RCADC-056). He was examined by a nurse on March 21, 2007, who twice took his vital signs, noted nothing remarkable, and referred him to a nurse practitioner and to a psychologist for evaluation of anxiety. Id. at 24-26 (RCADC-053-055). Plaintiff was examined by medical staff again on March 26, 2007, at which time his vital signs were checked and he was given additional medications. Id. at 28 (RCADC-062). He was examined again on March 28, 2007, in response to his verbal complaints that he was "feeling like he's having a heart attack." Id. at 29 (RDADC-064). His vital signs were taken, his blood sugar was tested and found to be high, and he was given an EKG test, which showed results within the normal limits. Id.; Defendant Rudd's Response to Plaintiff's Next Set of Interrogatories at #13, Docket Entry No. 87-1, at 98. Dr. Rudd was then consulted and he discontinued a medication and directed that Plaintiff be monitored. See Docket Entry No. 87-1, at 32 (RDADC-069).

7

The undisputed evidence as set out above shows that Plaintiff was not ignored in response to his complaints. Although Plaintiff argues that he had a heart attack, which was "missed," and attributes his later diagnosis of heart damage to this heart attack, his belief that he had a heart attack which caused damage to his heart is not supported by medical evidence and is based upon pure speculation on his part. While the medical records show that Plaintiff currently suffers from heart problems, there is no proof that these problems did not exist prior to March 2007, or that the events of March 2007, caused these problems. There is no evidence that Plaintiff suffered from further heart problems after March of 2007, at the RCADC or complained of heart problems while at the RCADC during the next five months. Additionally, the medical proof Plaintiff relies on to show that he has heart damage was generated as a result of cardiac consultations he underwent in March and April 2008, to determine his suitability for urological surgery. See Docket Entry No. 87-1, at 63-78, specifically, Cardiology Consultation dated March 4, 2008, and Cardiac Catheterization Report dated April 2, 2008. The consultations and cardiac procedures (angioplasty and catheterization) were not scheduled because of complaints made by Plaintiff about heart problems or because of medical problems directly related to the events on March 2007.[3]

Second, Plaintiff contends that he was treated with deliberate indifference after he complained to staff at the RCADC about kidney and bladder problems. See Plaintiff's Response to Motion for Summary Judgment (Docket Entry No. 86), at 4-5 and 8.

---

[3] Plaintiff states that he was told by medical staff at the DeBerry Special Needs Facility that he "could die" from his heart problems. See Docket Entry No. 86, at 3 and 8. There is no evidence in the record to support an inference that this warning referred to a heart attack which Plaintiff believes he suffered in March 2007, or to his treatment at RCADC.

The actual statement, made after his cardiac consultation in April 2008, was that "if recommendations [to follow up on "possibility of open heart surgery"] are not followed he can die from it." See Docket Entry No. 87-1, at 72 (Progress Record, dated April 8, 2008). It appears that the physician warned him of the need to follow the recommendation for surgery because of Plaintiff's comment that he expected to be released from prison soon and would prefer to have open heart surgery performed by his son's doctor in Alabama. Id. Despite this warning and despite Plaintiff's contention that his heart problems present a serious medical condition for which the lack of treatment amounts to deliberate indifference, he has apparently declined to have the recommended surgery performed while he is incarcerated. Id.; See also Plaintiff's Letter, dated January 29, 2009 (Docket Entry No. 94), at 2.

8

Plaintiff made an initial complaint about kidney/bladder problems on March 4, 2007,[4] after which he was examined, found to present unremarkable symptoms, and was given an antibiotic and other medications. See Docket Entry No. 87-1, at 22 (RCADC-045). On March 19, 2007, he complained about "kidney problems" and "prostate problems," among other things, and was again examined on March 21, 2007. Id. at 26-27 (RCADC-055-056). There is no indication that he was given any treatment specifically for the treatment of his kidney or prostate problems, and there is no evidence in the record that these problems presented a serious medical need at that time.

There is no evidence in the records that Plaintiff presented any other complaints about kidney, prostate, or bladder problems again until approximately 8:40 p.m. on June 13, 2007, when he complained about severe kidney pain, which he believed was related to kidney stones.[5] Id. at 35 (RCADC-116). Plaintiff was seen in the medical unit at 11:03, was given ibuprofen for pain, and had his urine tested. Id. at 34 and 36 (RCADC-114 and 117). Plaintiff complained about "flank pain," nausea, and vomiting the next afternoon, was examined by the medical staff again, and was told to report to the medical staff if his vomiting started again. Id. at 37 and 44 (RCADC-118 and 127). At approximately 3:23 a.m. on June 15, 2007, Plaintiff reported to the medical unit with further complaints of nausea, vomiting, and kidney pain, and he was admitted to an outside hospital that morning upon the orders of Defendant Rudd for further treatment. Id. at 38-42 (RCADC-119-120, 122, 124-125). Plaintiff received treatment for kidney stones, including insertion of a stent, while at the hospital and was discharged on June 24, 2007. Id. at 45 (RCADC-128); Affidavit of Rudd (Docket Entry No. 73-1), at ¶ 9.

---

[4] Plaintiff states that he made his first complaint about kidney problems on May 28, 2006. See Docket Entry No. 86, at 4. However, this complaint was made while Plaintiff was held at the RCADC for a short period of time prior to the incarceration which is at issue in this case and was made approximately nine months prior to the time frame involved in the instant complaint.

[5] Plaintiff asserts that his kidneys "shutdown" on this date. See Plaintiff's Response to motion for summary judgment (Docket Entry No. 86), at 4. However, he has no evidentiary proof that he suffered kidney failure on that day, as opposed to suffering from blockage caused by kidney stones. Further, the medical records also indicate Plaintiff was aware prior to his incarceration at the RCADC that his left kidney was minimally functioning. See Docket Entry No. 87-1, at 66 (Urology Consultation dated February 13, 2008).

9

Except for a narcotic which he had received at the hospital, Plaintiff was provided with the same medication upon his return to the RCADC as he had received at the hospital, see Affidavit of Rudd (Docket Entry No. 73-1), at ¶ 9, and he returned to the hospital on July 13, 2007, to have his stent removed. Id.; Docket Entry No. 87-1, at 47 (RCADC-150). Plaintiff submitted a sick call request on July 30, 2007, to "discuss medication and find out about my kidney and bladder problems." Id. at 49 (RCADC-205). Plaintiff was seen by the medical staff on August 2, 2007, additional medications were prescribed to him, and he was scheduled for a follow-up evaluation. Id. at 48 (RCADC-186). Plaintiff was examined again on August 9, 2007, at which time he complained about "pain with urination, hesitancy, frequency," and an appointment with the outside urologist for follow-up surgery was to be scheduled. Id. at 50 (RCADC-209). On August 15, 2007, an appointment was made for Plaintiff to be seen on August 23, 2007, at which time Dr. Dickson confirmed that Plaintiff needed an operation. Id. at 52-53 (RCADC-211 and 219). The next day, Plaintiff was scheduled for surgery on September 7, 2007, and pre-operative testing on August 31, 2007. Id. at 56 (RCADC-223).

This undisputed evidence simply does not support a claim of deliberate indifference. Plaintiff's complaints of kidney or bladder problems in March 2007, did not present an emergency situation necessitating immediate treatment. When he complained about pain related to kidney stones on the evening of June 13, 2007, he was given conservative treatment. When it became apparent that the kidney stones had not passed and additional treatment was required, he was transported to an outside hospital for further treatment during the early hours of June 15, 2007. Upon his return from the hospital, he was provided with medication, a follow-up appointment to remove his stent, and with examinations and medication upon his complaints about continued problems. He was then scheduled and taken for another outside consultation and then scheduled for surgery.

Plaintiff's complaints about the care he received for his heart problems and his kidney/bladder problems essentially amount to displeasure with the manner or adequacy of the course of treatment he received at the RCADC. When a prisoner has received some medical attention and the dispute

10

is over the adequacy of that care, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law, Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976), and it is well-settled that neither negligence nor medical malpractice will support a constitutional claim. See Estelle, 429 U.S. at 106; Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). Although the care Plaintiff received at the RCADC may not have been as prompt, thorough, or far-reaching as he may have received had he not been incarcerated and had he sought treatment on his own from private medical care providers, the Eighth Amendment does not guarantee that a prison inmate receive the "optimum or best medical treatment." McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978); Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982). The facts before the Court simply do not support a claim that the medical care rendered to Plaintiff at the RCADC was so deficient that it amounted to cruel and unusual punishment in violation of the Eight Amendment.

Plaintiff's final argument in opposition to Defendants' motions for summary judgment is that the state court order, which directed that he be transported to the Deberry Special Needs Facility upon his recovery from surgery in Rutherford County, was not complied with and he was instead transported from the RCADC to the TDOC prior to the surgery, which had been scheduled for September 7, 2007, but was cancelled because of his transfer. See Plaintiff's Response to Defendant Rudd's Statement of Undisputed Material Facts (Docket Entry No. 87-1) at 123-24; Plaintiff's Response to Motion for Summary Judgment (Docket Entry No. 86), at 6-7. Plaintiff contends that Defendants Rudd and Jones were deliberately indifferent because they did not prevent him from being transported to the TDOC prior to the surgery. See Plaintiff's Response to Summary Judgment Motion (Docket Entry No. 86), at 8-9.

There is no evidence in the record showing that Defendant Rudd had any authority to prevent or delay Plaintiff being transferred to the TDOC because a surgical procedure was scheduled. Further, even if Defendants Rudd or Jones had the authority to delay Plaintiff's transfer to the TDOC until after the surgery, there is no evidence that a failure to delay the transfer until after the surgery

11

constituted deliberate indifference to a serious medical need. Although the surgery had been scheduled, there is no evidence that the surgery was an emergency procedure or that there was an urgent or compelling medical need for the surgery to take place either on September 7, 2007, or prior to Plaintiff's transfer to the TDOC. Indeed, the medical records show that Plaintiff was still awaiting the surgery as late as April 2008, and it is unclear whether the surgery has ever occurred.

The Court notes that, in addition to the evidence before the Court which shows that Plaintiff was not treated with deliberate indifference at the RCADC, there is a lack of evidence supporting a claim against Defendant Jones in either his individual or official capacity. A defendant cannot be held liable under Section 1983 absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct. Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Because constitutional liability requires a showing of the personal involvement of the defendant in the alleged unconstitutional activity, a defendant cannot be found liable under the theory of respondeat superior or merely because he is in a supervisory position. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264 (2000); Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982). Accordingly, Defendant Jones cannot be found liable under Section 1983 merely because he is the Sheriff who is ultimately in charge of operations at the RCADC.

To the extent that Plaintiff has sued Defendant Jones in his official capacity, the claims brought against an official in his official capacity are essentially claims against the entity of which an officer is an agent. Monell v. Dep't of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Stemler v. City of Florence, 126 F.3d 856, 864 n.8 (6th Cir. 1997). Accordingly, such claims are viewed as being brought against the Rutherford County government and must satisfy the standard for municipal liability claims as set out in Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). See also Gregory v. Shelby County, 220 F.3d 433, 441 (6th Cir. 2000) (citing Monell, supra); Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988).

12

In Monell, the Supreme Court held that a municipality can be found liable under Section 1983 where a policy of the municipality itself causes the constitutional violation at issue. The Supreme Court held that, "[i]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. The plaintiff must show that the governmental entity was the "moving force" behind the violation of the constitutional rights at issue. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting Monell, 436 U.S. at 694). The plaintiff "must show that the [County's] action was taken with the requisite degree of culpability and must demonstrate a direct casual link between the [County's] action and the deprivation of federal rights." Gregory, 220 F.3d at 442 (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)); Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-09 (6th Cir. 1996). Because the Court has found no evidence supporting claims that Plaintiff was treated with deliberate indifference to his serious medical needs while at the RCADC, any municipal liability claim necessarily fails. However, even if Plaintiff had set forth evidence showing that he suffered deliberate indifference to his serious medical needs, he has not set forth any evidence showing that this constitutional wrongdoing occurred because of a policy or regulation of Rutherford County.

**RECOMMENDATION**

The Court respectfully RECOMMENDS that the Motion for Summary Judgment filed by Defendant Truman L. Jones, Jr. (Docket Entry No. 63), and the Motion for Summary Judgment filed by Defendant John D. Rudd (Docket Entry No. 70) be GRANTED and this action be DISMISSED WITH PREJUDICE.

The Court further RECOMMENDS that any appeal NOT be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific

portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

        Respectfully submitted,

        _____
        JULIET GRIFFIN
        United States Magistrate Judge