UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES GRIFFITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:08-0385 |
| v. ) | Judge Echols |
| ) | |
| WILLIAM WHITESELL, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM

This is a pro se action under 42 U.S.C. § 1983 brought by Plaintiff James Griffith, formerly a jail inmate at the Rutherford County Adult Detention Center ("RCADC"). He initially filed suit against numerous Defendants alleging various causes of action. However, after preliminary review by the Court under the Prison Litigation Reform Act, all of his claims and causes of action were dismissed for frivolity, except his claim against Rutherford County Sheriff Truman Jones ("Sheriff Jones") and Dr. John D. Rudd ("Dr. Rudd"), the Medical Director of the RCADC. Plaintiff alleges those Defendants failed to provide him with necessary medical care while he was housed at the RCADC.

Presently pending before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Docket Entry No. 106) which recommends that the Motions for Summary Judgment filed by Defendants Sheriff Jones (Docket Entry No. 63) and Dr. Rudd (Docket Entry No. 70) be granted. The Magistrate Judge also recommends the Court certify under 28 U.S.C. § 1915(a)(3) that any in forma pauperis appeal of the dismissal of the Complaint would not be taken

1

in good faith. Plaintiff has filed Objections to the R & R (Docket Entry Nos. 108, 109 & 111).[1] Also pending is Plaintiff's "Motion to Amend the Above Case" (Docket Entry No. 110), to which Defendants have filed responses in opposition. (Docket Entry Nos. 112 & 114).

## I. THE R & R AND OBJECTIONS THERETO

When a party makes timely objections to an R & R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3); Fed.R.Civ.P. 72. Having conducted this *de novo* review, the Court concludes that the Magistrate Judge properly determined that summary judgment is appropriate in this case.

After analyzing the record, the Magistrate Judge concluded that even though Plaintiff suffered from medical conditions while at the RCADC which were serious enough to satisfy the subjective component of an Eighth Amendment claim, Plaintiff was unable to satisfy the objective component of such a claim under Farmer v. Brennan, 511 U.S. 825, 834 (1994).[2] In doing so, the Magistrate Judge properly noted that the objective prong requires more than a showing of negligence, and, instead, requires that Plaintiff demonstrate Defendant acted with "deliberate indifference" to a serious

---

[1] After the entry of the R & R, Plaintiff filed three documents in letter form in which he complains about the Magistrate Judge's recommendation that this case be dismissed. The Court construes those filings collectively as Plaintiff's Objections to the R & R.

[2] Plaintiff's exact legal status at the time of all of the events in question is not entirely clear. Nevertheless, while the Eighth Amendment applies to convicted inmates, pretrial detainees "are guaranteed the equivalent right to adequate medical treatment by the Due Process clause of the Fourteenth Amendment and are subject to the same deliberate-indifference standard of care." Ford v. County of Grand Traverse, 535 F.3d 483, 493 (6th Cir. 2008).

2

medical need. Plaintiff failed to make such a showing because, while held at the RCADC for six months, Plaintiff "was repeatedly seen by medical care providers in response to his complaints . . . , was provided with multiple prescribed medications, had his blood sugar tested daily, was given an EKG test, was transported to an outside hospital for treatment on June 15, 2007, and July 13, 2007, was transported for an examination by an outside urologist on August 23, 2007, and was scheduled for surgery on September 7, 2007." (Docket Entry No. 106 at 6-7).

Further, with respect to Plaintiff's specific claim that he was not provided treatment for a "heart attack and chest pains" in late March 2007, the Magistrate Judge observed that the record shows when Plaintiff complained he was examined by medical staff who repeatedly took his vital signs, he was given additional medications, his blood sugar was tested, and he was given an EKG test which showed normal results. While Plaintiff was later diagnosed with heart problems, there is no evidence which suggests either that this was not a pre-existing condition, or that any alleged lack of care at the RCADC caused his heart problems.

As for Plaintiff's complaint that Defendants were deliberately indifferent when he complained to the staff at the RCADC about kidney and bladder problems, he was repeatedly seen by medical staff and, when his complaints continued he was referred to an outside hospital by Dr. Rudd during which Plaintiff received treatment for kidney stones, and, upon his return to the RCADC from the hospital, his further complaints were addressed by the medical staff and he was scheduled for surgery.

With respect to Plaintiff's allegations of deliberate indifference generally, the Magistrate Judge observed:

> Plaintiff's complaints about the care he received for his heart problems and his kidney/bladder problems essentially amount to displeasure with the manner or adequacy of the course of treatment he received at the RCADC. When a prisoner has

3

> received some medical attention and the dispute is over the adequacy of that care, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law, Westlock v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976), and it is well-settled that neither negligence nor medical malpractice will support a constitutional claim. See Estelle [v. Gamble], 429 U.S. [97,] 106 [(1976)]; Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). Although the care Plaintiff received at the RCADC may not have been as prompt, thorough, or far-reaching as he may have received had he not been incarcerated and had he sought treatment on his own from private medical care providers, the Eighth Amendment does not guarantee that a prison inmate receive the "optimum or best medical treatment." McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978); Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982). The facts before the Court simply do not support a claim that the medical care rendered to Plaintiff at the RCADC was so deficient that it amounted to cruel and unusual punishment in violation of the Eight [sic] Amendment.

(Docket Entry No. 106 at 10-11). Having reviewed the entire record and the applicable law, the Court wholly agrees and finds, like the Magistrate Judge, that even when the facts are construed in Plaintiff's favor, no reasonable jury could find in favor of the Plaintiff if this action were to proceed to trial, see, Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 339 (6th Cir. 2008), particularly since "'deliberate indifference' is a stringent standard of fault." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 409 (1997). One "who provides careless or ineffective treatment merely displays incompetence, not unconstitutional deliberate indifference," Bertl v. City of Westland, 2009 WL 247907 at *5 (6th Cir. 2009), and where officials reasonably respond to the medical situation presented, they are not liable "even if the harm ultimately was not averted." Harrison v. Ash, 539 F.3d 510, 519 (6th Cir. 2008)(citation omitted).

In his Objections, Plaintiff places great weight on Defendants' purported refusal to comply with a state court order which allegedly mandated medical treatment. The court order provided as follows:

> This matter having come before the Honorable Court on the 20th day of August, 2007 and for good cause shown it is hereby ordered that the Defendant shall be transported to the Deberry Special Needs Facility immediately upon his recovery

4

>from surgery here in Rutherford County. The Defendant's medical condition is such
>that he shall be transported as soon as possible to ensure proper care.

(Docket Entry No. 1 at 25). Plaintiff alleges that the order was thwarted because he was transferred from the RCADC to the Tennessee Department of Corrections prior to the surgery and his surgery was consequently postponed. These machinations, Plaintiff argues, show that "the State of Tennessee is bad" (Docket Entry No. 109 at 1) and its officials chose not to follow the judge's ruling in order to save money. Plaintiff urges the Court "to do [its] job and not let the State of Tennessee get away with it." (Id.).

The issue before the Court, however, is not whether the State of Tennessee is "bad" or whether it was attempting to conserve resources, but rather whether Plaintiff has set forth sufficient evidence to present a jury question on whether Defendants Sheriff Jones and/or Dr. Rudd were deliberately indifferent to Plaintiff's serious medical needs while he was in the RCADC. The mere existence of the state order does not establish a question of fact on that issue for at least two reasons.

First, the order on its face does not suggest that Plaintiff's life was in peril, only that after surgery (the type of which is not specified), Plaintiff was to be taken immediately to DeBerry.[3] Second, and more importantly, Plaintiff has not shown that either of the remaining Defendants was responsible for his transfer to the Tennessee Department of Corrections. To be liable under Section 1983, there must be personal involvement in the allegedly unconstitutional act, as there is no *respondeat superior* liability. See, Grinter v. Knight, 532 F.3d 567, 575 (6th Cir. 2008). A defendant in a Section 1983 action is not responsible for a situation over which he or she has no control and is not responsible for other's errors. See, Mabry v. Antoni, 289 Fed. Appx. 895, 901 (6th Cir. 2008).

---

[3] In fact, the Court denied Plaintiff's request for a temporary restraining order because there was no showing of urgency and Plaintiff waited almost a year to request emergency relief. (Docket Entry No. 39).

5

In this case, Defendant Sheriff Jones has submitted an affidavit in which he states that he did not know Plaintiff was even incarcerated at the RCADC until after this lawsuit was filed, that he had no knowledge of Plaintiff's alleged medical conditions, that he was unaware of the state court order requiring transfer to DeBerry, and that he did not order that Plaintiff be transferred from the RCADC to the custody of the Tennessee Department of Corrections. (Docket Entry No. 81, Sheriff Jones Aff. ¶¶ 3-4). Defendant Dr. Rudd has submitted an affidavit in which he states that neither he nor the RCADC medical staff had the authority to prevent Plaintiff's transfer to a state correctional facility. (Docket Entry No. 73-2, Dr. Rudd Aff. ¶ 10).[4]

In his Objections, Plaintiff states, "[y]ou know and I know that either one of these men could have stopped my transfer but instead caused it." (Docket Entry No. 109). The Court knows no such thing. What the Court knows is that which is before it in the form of competent evidence, including, in this case, the affidavits from Sheriff Jones and Dr. Rudd in which they state that they were not involved in Plaintiff's transfer to the Department of Corrections. Plaintiff's speculation about knowledge is not evidence and this objection is overruled.

Plaintiff also objects to the Magistrate Judge's conclusion that there is no evidence Plaintiff's treatment or lack of treatment at the RCADC caused Plaintiff's later health ailments and argues that "there is nothing to prove it did not." (Docket Entry No. 109 at 3). While "[a]n Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future," the inmate making that claim "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" Dodson

---

[4]In that same paragraph, Dr. Rudd states that the surgery in question was for "urinary difficulties," that Plaintiff himself originally chose to delay the surgery until after his criminal case was completed, and that some patients with the same condition elect not to have the surgery.

6

v. Wilkinson, 304 Fed. Appx. 434, 439 (6th Cir. 2008)(citation omitted). In short, it is Plaintiff's burden to prove his deliberate indifference claim and not Defendants' burden to disprove it. This objection is overruled.

Finally, Plaintiff argues in his Objections that the Magistrate Judge erred in "taking this case on paper," and, in a follow-up filing addressed to "All American Citizens and syndication," complains about the Magistrate Judge "try[ing] the case by mail" and "read[ing] some old cases he thought was [sic] similar to mine (you know one size fits all)[.]" (Docket Entry No. 111 at 1-22). Plaintiff urges the Court to allow him to try the "case in a court of law before a jury of my peers." (Docket Entry No. 109 at 4). Plaintiff asserts that if "we lived in Russia, China, North Korea or Iran we could expect something like this but in America this is unbelievable and unacceptable." (Docket Entry No. 111 at 2).

It was entirely proper for the Magistrate Judge to consult the case law surrounding Motions for Summary Judgment, Section 1983, and deliberate indifference claims under the Eighth Amendment. The law does not develop in a vacuum. See Franklin v. Franklin, 2000 WL 687434 at *2 (6th Cir. 2000). Indeed, judges are bound by controlling precedent, see, Thompson v. Campbell, 81 Fed. Appx. 563, 569 (6th Cir. 2003), and the judge's role in summary judgment is to apply the applicable law to the supported facts contained in the record, see, Davis v. Siemens Med. Solutions USA, Inc., 279 Fed. Appx. 378, 379 (6th Cir. 2008). This process does not violate the Seventh Amendment which provides civil litigants with the right to a jury trial. See, McDaniel v. Kindred Healthcare, Inc., 311 Fed Appx. 758, 758-59 (6th Cir. 2009)(collecting cases).

Here, the Magistrate Judge determined there were no genuine issues as to any material fact and that Defendants were entitled to judgment as a matter of law in accordance with Rule 56 of the

7

Federal Rules of Civil Procedure. This Court's independent review of the entire file leads it to the same conclusion and this objection is overruled.

## II. **MOTION TO AMEND**

After Plaintiff filed two of the three letters in which he objected to the recommended dismissal of this case, he filed a Motion to Amend seeking to add the "chairman of the county commission" and Rutherford County as Defendants and to increase his punitive damages claim to five million dollars (Docket Entry No. 110). That filing was made on June 1, 2009, even though the Scheduling Order in this case provided that any motions to amend were to be filed by September 22, 2008, and discovery was to be closed on October 24, 2008 (Docket Entry No. 36).

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).[5] "'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir.2002) (citation omitted). "Another relevant consideration is possible prejudice to the party opposing the modification." Id.

In this case, Plaintiff has failed to establish good cause for amendment. All he states in his Motion to Amend is that "two other courts have found over whelming [sic] evidence on the part of the plaintiff" which "show the defendants cause initial health problems by failing to provide adequate care and that failing to provide adequate care has caused continued decline in the health of the plaintiff." (Docket Entry No. 110). Plaintiff supplies no evidence to support that statement and no reference to the two cases which were supposedly decided in his favor. Nor does Plaintiff explain

---

[5]Even though Rule 15 provides that leave to amend "shall be freely given," that Rule does not come into play once a scheduling order's deadline to amend has passed unless Plaintiff establishes good cause under Rule 16(b). Leary v. Daescher, 349 F.3d 888, 908 (6th Cir. 2003).

8

why he could not have moved to amend his complaint to add these defendants and increase his punitive damages claim earlier. Instead of moving to amend the complaint within the time set forth in the Scheduling Order, Plaintiff waited more than eighth months by which time discovery had closed, Defendants had filed and briefed their Motions for Summary Judgment, and the Magistrate Judge had entered an adverse R & R. Such actions suggest dilatoriness by Plaintiff, and not the diligence required by Rule 16(b)(4). Further, an amendment at this time would prejudice the Defendants because the original Complaint would become a nullity and Defendants would be required to defend the Complaint as amended, even if that meant merely refiling their Motions for Summary Judgment. See, B & H Medical, LLC v. ABP Admin., Inc., 526 F.3d 257, 267 at n.8 (6th Cir. 2008)(after amendment, the prior complaint is a nullity and performs no function in the case). Accordingly, the Motion to Amend will be denied.

### III. CONCLUSION

On the basis of the foregoing, the R & R (Docket Entry No. 106) will be accepted and approved; Plaintiff's Objections thereto (Docket Entry Nos. 108, 109 & 111) will be overruled; Defendants' Motions for Summary Judgment (Docket Entry Nos. 63 & 70) will be granted; Plaintiff's Motion to Amend (Docket Entry No. 110) will be denied; and the case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

9